Quaker City National Bank *v.* John W. Hepworth, trading as John W. Hepworth & Co., Appellant.

*Promissory notes—Payment—Confession of judgment—Evidence.*

Where a debtor of a bank confesses judgment to a trustee to secure the bank for all the debts which he owes it, including indorsed notes, and the bank has knowledge that the judgment was confessed; that the debtor's property was sold by the sheriff and bought in by a trustee, and that the trustee conducted the debtor's business afterwards for over a year, the maker of one of the indorsed notes has a right in a suit upon such note to show what the property bought in by the trustee was worth, what it sold for, what was done with the proceeds, and in general to prove if possible that the bank had received, or ought to have received, satisfaction for the note out of the business conducted by the trustee.

Argued March 28, 1899.    Appeal, No. 400, Jan. T., 1898, by defendant, from judgment of C. P. No. 3, Phila. Co., June T., 1897, No. 858, on verdict for plaintiff.    Before GREEN, MC-COLLUM, MITCHELL, DEAN and FELL, JJ.    Reversed.

Assumpsit against the makers of a promissory note.

At the trial it appeared that the note in suit had been indorsed by George H. Boulter, and had been discounted by the plaintiff.  Subsequently Boulter confessed judgment to William P. Datz in trust for the sum of $1,400 for himself and $14,100 for the plaintiff bank.  This judgment covered all debts of Datz to the bank, including indorsed notes.  Subsequently Datz bought in Boulter's goods at sheriff's sale, and conducted Boulter's business for over a year.

Defendant offered to prove by his own testimony that the

fair market value of the property that was levied upon by the sheriff was upwards of $20,000; that it would have sold at auction sale for upwards of that price; that it was not old iron, but machinery in good running order.

Objected to.

The Court: That is excluded unless it is to be followed by testimony that the bank committed some fraud on Mr. Hepworth.

Exception for defendant. [2]

William P. Datz was asked by defendant:

"Did you sell the goods that you manufactured there in your own name as trustee, or in the name of the following: of the Automatic Knitting Company, of the Somerset Hosiery Company, and of George H. Boulter, manager?"

Objected to.

Mr. Johnson, of counsel for defendant: I asked the witness this question for the purpose of ascertaining whether or not the business which he says was conducted by him as trustee, was really conducted by George H. Boulter as manager and real owner of the property.

The Court: Objection sustained. Exception for defendant. [3]

George H. Boulter was called by defendant, and asked:

"Didn't you tell Philip Yost, your foreman, before the sheriff's sale, about the 19th of April, 1897, that he need not worry, that you would soon have matters fixed up so you would go ahead as usual?"

Objected to. Objection sustained. Exception for defendant. [4]

"And didn't you say to him before the sheriff's sale, 'Your pay goes on, and we will finish the goods as usual. The business won't stop long. The concern has plenty of money to pay everybody?'"

Objected to. Objection sustained. Exception for defendant. [5]

"The goods that are manufactured at that place run in the name of Datz, trustee—aren't the bulk of them shipped to New York since the failure, in the name of the Automatic Hosiery Company?"

Objected to. Objection sustained. Exception for defendant. [6]

"In whose name are the goods sold at that place that Datz has turned over to you—in your name as manager, or in the name of Datz, trustee?"

Objected to. Objection sustained. Exception for defendant. [7]

"Didn't you say to Yost just after the sale that it only took twenty minutes to sell nearly $30,000 worth of goods?"

Objected to. Objection sustained. Exception for defendant. [8]

"Didn't James Henry, a yarn manufacturer, attend that sale, and did you not tell him on two different occasions that you had two dollars to pay for every one you owed; and didn't you ask him not to bid at that sale, as you wanted to have it all bought in?"

Objected to. Objection sustained. Exception for defendant. [9]

"Didn't you say to James Henry after the sale not to worry, that the sale was only made to beat your brothers; that they had a suit against you, and that you could have paid the brothers, but the bank wouldn't let you?"

Objected to. Objection sustained. Exception for defendant. [10]

"Didn't you say to E. S. Hyde, a yarn dealer, that you had some reasons for confessing judgment which you would not state, but that you had dollar for dollar to pay all you owed, and if he would keep quiet he would get his money?"

Objected to. Objection sustained. Exception for defendant. [11]

"Didn't you have a conversation with Robert Henry, a yarn salesman for Tillinghast & Co., about thirty days after the sale, when Henry made a demand for what was due Tillinghast, in which you said you could not give him any money just then because you said the bank would not permit you to pay any out until they were first paid?"

Objected to. Objection sustained. Exception for defendant. [12]

The court gave binding instructions for plaintiff. [1]

Verdict and judgment for plaintiff for $1,301.08. Defendant appealed.

*Errors assigned* were (1) above instruction, quoting it; (2–12) rulings on evidence, quoting the bill of exceptions.

*John G. Johnson,* for appellant.—The evidence disclosed a duty on the part of the bank to protect the appellant's note.

Inasmuch as the property purchased at the sheriff's sale was greatly in excess of the amount of the execution, and inasmuch as the bank used this property in carrying on a new business, instead of selling the same, it was charged with its value as though the same had been converted, and, qua the defendant, his note was paid: Wolford v. Herrington, 86 Pa. 39; Cowperthwaite v. Bank of Carbondale, 102 Pa. 402.

Defendant's note was paid, certainly in part, and, we contend, in whole, by the proceeds of the sheriff's sale.

*S. Davis Page,* of *Page, Allinson & Penrose,* for appellee.— The note sued on was not accommodation paper, but even if it were, that would have been no defense to the bank's claim: Penn Safe Deposit & Trust Co. v. Stetson, 175 Pa. 164; Philler v. Patterson, 168 Pa. 483; Moore v. Baird, 30 Pa. 138; Lord v. Ocean Bank, 20 Pa. 384.

Datz's retention of the goods and machinery purchased at the sheriff's sale on his judgment as trustee, and his continuous effort to realize the debt due by Boulter to his own firm, as well as to the bank, by carrying on the business or by the sale of it, is not pertinent to this investigation: Lord v. Ocean Bank, 20 Pa. 384; Philler v. Patterson, 168 Pa. 483.

The refusal of the offers of evidence and declination of the instructions asked, and the direction of a verdict for the appellee, are sustained by the facts and the law applicable thereto: Braden v. O'Neil, 183 Pa. 462; McCracken v. Roberts, 19 Pa. 390; Maynard v. Nat. Bank, 20 W. N. C. 272; Helzer v. Helzer, 187 Pa. 243.

OPINION BY MR. JUSTICE GREEN, July 19, 1899:

There is no question that when Boulter confessed the judgment for $15,500 to Datz as trustee it was done to secure Datz for only $1,400, which Boulter owed him, and for $14,100, which Boulter owed the bank.     Datz was therefore trustee for the bank under this judgment to the extent of $14,100, and that

fact was perfectly well known and understood by the bank. Clark, the cashier, being examined as a witness, testified as follows :

" Q. What was the indebtedness of Boulter to the bank? A. Fourteen thousand, one hundred dollars. Q. That was the indebtedness in 1897, was it? A. Yes, sir. Q. That included all that he was indebted to the bank both on made and indorsed notes, did it not? A. Yes, sir. Q. It included this note amongst others of $1,200, dated March 29, 1897, made by Hepworth & Company to the order of Boulter, payable three months after date and indorsed by George H. Boulter? A. That is right. Q. When did you first hear that a judgment was confessed to William P. Datz, trustee, for $15,500, which included $14,100, being all the indebtedness of Boulter to the bank? A. I understood that Mr. Boulter had confessed judgment to Mr. Datz as trustee for the amount that the bank was owing, and for his own indebtedness sometime about the time that note was given. Q. Did you know of the levy under that judgment? A. No, sir. Q. You know nothing at all about the sale of property under that judgment? A. Nothing about it. Q. You knew nothing of what was done with that property? A. All I knew was Mr. Datz had bought it in and was operating it since. That is all. Q. Acting as trustee for the bank. You know that? A. Certainly. Q. He has acted therefor since, having bought the property in under that judgment, and for the benefit of that judgment, with the full knowledge and approval of the bank? A. Certainly."

The witness having stated the items which constituted the indebtedness of Boulter to the bank, and which included the $1,200 note in suit, was asked as to what efforts the bank made to get their money out of the business which Datz as trustee, with Boulter as manager, carried on subsequently to the sheriff's sale of Boulter's goods to Datz as trustee, and said, in reply to a question: " A. The only inquiry that we made was that Mr. Datz had a judgment, and we tried to get the amount out of it. Q. What attempt did you make to get it? A. We knew that Mr. Datz was running the plant, and they have paid us some $900. . . . Q. Do you mean to say that you did not call upon the trustee to account for the large amount of property sold at that sale? A. No account except that there was about $900

paid off on account. Q. How was the business run? A. By Mr. Datz, trustee, as I understood. Q. Who manipulates the business? A. Boulter, as the manager, I believe. . . . Q. You knew he was trustee of the bank? A. Yes. Q. You knew he had bought the property in at sheriff's sale? A. Yes. Q. You knew he was running the business in the name of Datz, trustee? A. Yes. Q. You knew Datz was trustee for the bank of upwards of $14,000? A. Yes, sir. . . . Q. Did you know George Boulter was acting as manager of the business? A. Yes, certainly."

William P. Datz, who was the trustee named in the judgment, was asked: " Q. Did you have any conversation with him (Clark) on the subject of the sheriff's sale before the sale took place? A. Yes, sir. Mr. Clark and the president of the bank both knew that Mr. Boulter had confessed judgment to me for the bank's claim. Q. Did you attend the sheriff's sale? A. Yes, sir. Q. You bought in the property as trustee? A. My counsel did. Q. For you as trustee? A. Yes, sir. . . . Q. Having bought that as trustee for the bank what did you do in the way of carrying out your trust with the property? A. I have been running the plant since under my name as trustee. Q. Did you attend there, or did Mr. Boulter run it for you? A. Mr. Boulter has run it as manager."

Under the foregoing testimony, without considering the personal testimony of the defendant, it is not easy to see how the conclusion can be resisted that Datz, the plaintiff in the judgment, took the judgment, held it and bought in all the stock of goods, as trustee for the bank, with the full knowledge and consent of the bank, and also carried on the business as such trustee for more than a year. As it seems to us now the jury might well find that the bank, having control of the property, through their trustee, carried on the business, and were properly responsible for the manner in which it was conducted and for its results. It seems to us a fair question for the jury was raised under the testimony, to inquire into the operations of the trust, and we think that the defendant should be at liberty to show what the stock of goods was worth, what it sold for, what was done with the proceeds, and if he could establish facts which entitled him to claim that the bank had received, or ought to have received, satisfaction for the note in suit out of the sub-

sequent management and disposition of the goods by the trustee, he should have the opportunity to do so. But all inquiry of this kind was shut off by the binding direction of the learned court below to the jury to find a verdict for the plaintiff for the full amount of the claim. We think, in the peculiar circumstances of this case, this was error and that the case should have been submitted to the jury on all its facts. For obvious reasons we cannot here discuss the facts nor decide the merits of the respective contentions.

We sustain the first, second, third, sixth and seventh assignments, the others are dismissed.

Judgment reversed and new venire granted.