## Quaker City National Bank, Appellant, v. Hepworth.

*Promissory notes—Payment—Confession of judgment—Evidence.*

Where a debtor of a bank confesses judgment to a trustee for the bank to secure the bank for all the debts which he owes it, including indorsed notes, and the bank has knowledge that the judgment was confessed, that the debtor's property was sold by the sheriff and bought in by the trustee, and that the bank's trustee conducted the debtor's business afterwards for over a year, the maker of one of the indorsed notes has a right in a suit upon such note by the bank to show that the note was an accommodation note, and that the bank knew that it was an accommodation note, and also to show what the property bought in by the trustee was worth, what it sold for, what was done with the proceeds, and in general to prove if possible that the bank had received, or ought to have received, if the business had been properly conducted by the trustee, satisfaction for the note, out of the debtor's property.

*Appeals—Assignments of error—Evidence.*

An assignment of error to the admission or exclusion of testimony must quote the questions or offers, the objections thereto, and the ruling of the court thereon. The ruling of the court is necessarily upon the sufficiency of the objection, and an assignment of error which does not show the ground of an objection does not make clear what the ruling of the court was.

Argued Oct. 17, 1902. Appeal, No. 283, Oct. T., 1901, by plaintiff, from judgment of C. P. No. 3, Phila. Co., June T., 1897, No. 858, on verdict for defendant in case of Quaker City National Bank v. John W. Hepworth, trading as John W.

Hepworth & Company.   Before RICE, P. J., BEAVER, OR-
LADY and W. D. PORTER, JJ.   Affirmed.

Assumpsit against maker of a promissory note.   Before
FINLETTER, P. J.

The facts are stated in the opinion of the Superior Court.
See also former report of case in 192 Pa. 315.

Plaintiff presented these points:

1. An accommodation note is a loan of the credit of the
maker to the payee, which he may use as freely and with the
same effect as to the maker as he could use a note given for
a full consideration.  It is no defense for the maker of such a
note when sued by the indorsee to aver the character of the
note or knowledge of its character by the indorsee.

2. Even if the jury believes from the testimony that Hep-
worth, as a maker of the note in suit, gave the note for the ac-
commodation of Boulter, and himself did not derive any per-
sonal benefit from the discount of it, and that such fact was
known to the bank, these facts would constitute no defense to
the suit.

3. If the jury believe from the evidence that there was no
other defense to the suit than that it was given by Hepworth,
the maker, for the accommodation of the payee, and that he him-
self derived no personal benefit from it, and that it was dis-
counted by the bank with knowledge of that fact, the verdict
must be for the plaintiff.

4. The fact that the plaintiff had other collateral securities
for the same debt more than sufficient to cover it, from which,
however, the debt had not been realized, is not a ground of de-
fense on the part of the maker of this note, even if it were ac-
commodation paper.

5. Even if Hepworth were an accommodation maker, he can
only defend against the plaintiff on the ground of actual pay-
ment: Philler v. Patterson, 168 Pa. 468.

6. Unless the jury believes from the evidence that the plain-
tiff has realized the full amount of the note and interest there-
on from the machinery and assets bought at the sheriff's sale
under the judgment confessed by the payee to Datz as trustee,
and that the defendant actually abstained from bidding at the
sale under an express understanding with William H. Clark,

the cashier of the bank, or with Datz, the trustee for the bank, that the plaintiff would look to the assets obtained by the trustee at the said sale for the satisfaction of the debt exclusively, the verdict must be for the plaintiff for the full amount of its claim.

7. Under all the evidence the verdict should be for the plaintiff.

All of the above points were refused. [1–7]

The court charged as follows:

This case is bought by the Quaker City National Bank to recover upon a note drawn by the defendant in favor of George H. Boulter at three months for $1,200, which was discounted by the bank for George H. Boulter and the proceeds given to him.

The note is in evidence and entitles the plaintiff to a verdict unless the defendant has established by evidence a sufficient defense. The evidence must be sufficient to overcome the note, which is an acknowledgment of an indebtedness of the $1,200. The defendant, therefore, the note having been given and received in evidence, is required to establish by evidence a good and sufficient defense.

The defense, as opened to you by counsel and as attempted to be shown by the evidence is, first of all, that the note was an accommodation note ; that no consideration was given for it, and that the plaintiff had knowledge of these facts ; second that the note was paid by the property which was obtained at the sheriff's sale as Boulter's property ; and thirdly, if the note was not paid by the property, or the proceeds thereof, that there were sufficient goods and property to pay the note if a proper use of the property had been made by the trustee Datz, who appears to have been the agent of the plaintiff.

I have said that this line of defense must be established by the defendant by sufficient evidence. Of course, in considering both sides of the case, you must consider also all the evidence on any point which is of interest in the case.

[The first question for your consideration is, was the $1,200 note, which has been given in evidence, an accommodation note?] [10] An accommodation note is a loan of the credit of the maker to the payee, who may use it just as freely as if he had given a full consideration for it. In this connection it is

proper that I should say to you that if the defendant received any consideration for the note, either from Boulter or from anyone else interested in the note, then it was not an accommodation note, and the plaintiff should recover. The evidence upon this question, it is not necessary for me, especially after the exhaustive and able arguments of counsel, to detail at length, but it is my duty to say that upon this, as upon all other questions that may arise in this case, you must give all the evidence on both sides the most careful consideration.

[I do not recollect that there is any evidence upon the question of consideration in this case, except that of the defendant himself and Mr. Boulter. If there is any other evidence on that question, the jury will consider it and counsel will call your attention to it. Upon the question of whether it was an accommodation note, you have the positive direct evidence of both the defendant and Boulter. I can only say that you must determine it upon their evidence, if there is no other, and the circumstances generally of the case, if they bear upon that question. I understood the defendant to say that there was no consideration whatever from anyone; but, on the other hand, Boulter has sworn that at the time the note was given the defendant was indebted to him in $7,000 or $8,000, or whatever sum he specifically named. He gave no precise amount, but I think he said it was six, seven, or eight thousand dollars. However, that is a matter entirely for your consideration, and I have nothing further to say upon it, except that if you determine that the defendant owed Boulter that money, or any amount up to the amount of $1,200, at that time, then the plaintiff ought to recover in this case. On the other hand, if you believe the defendant's story, then it is for you to say what effect it has. He said positively that no consideration passed between him and Boulter.] [11]

[Even if you should come to the conclusion that the note was an accommodation note, that is, that the defendant had received no consideration for it from Boulter or anyone else in connection with it, then the question arises, had the plaintiff, the bank, knowledge that it was an accommodation note? Because, even if it were an accommodation note and they had no sufficient knowledge of the fact, either at the time the note was given or whilst it was running, then the verdict should be for

the plaintiff for the amount of it. If, however, you find from the evidence that they had, or ought to have had, from the facts and circumstances of the case, knowledge that it was an accommodation note, then your verdict upon that question ought to be for the defendant.] [12]

There is another matter to which I should call your attention, and that is, even if upon all the questions that I have suggested to you for consideration you are with the plaintiff and against the defendant, then you are to consider the other defense which has been set up by the defendant and endeavored to be sustained by the evidence in the case. What property was obtained by Datz, the trustee, and what was his position so far as these parties are concerned? If the evidence shows that Datz had sufficient property which, if he had used it in a proper manner would have resulted in at least $15,500, then the plaintiff cannot recover, because I understand from all the evidence in this case, from the bank officers themselves, that in the exercise of his duties as trustee Datz was acting for the bank, and you will recollect that $14,100 of that judgment belonged to the bank; in other words, he was trustee for the bank for almost the whole amount, excluding his own $1,400 ; he was trustee for the bank for all that money, including the note in controversy. As trustee it was his duty to every one who might have an interest in that firm, or who might be in any way concluded by his acts, to act in a full and fair way towards all the parties in interest. It was his duty, in the first place, to see that under his judgment and execution a proper sale was made of the goods of Mr. Boulter, which were to satisfy, if possible, the judgment for $15,500. I call your attention to this because it is a very important part of this case, the actual sale. [Did Mr. Datz take the proper means to make that sale as available as possible? Were the goods so arranged so that the largest number of bidders might have an opportunity and the highest price obtained? Were they so arranged that every buyer could see exactly what he was bidding for and what he was going to buy? [13] I do not desire to recur particularly to the evidence, but it is your duty to recollect exactly all the evidence in reference to the manner in which the sale was conducted. [There is no evidence that there was any intentional fraud on the part of anybody or any attempt to accommodate anyone.

There is no evidence of that, but inasmuch as it was Datz's duty to get the very best possible price for the goods, it was his duty to see that the sale was so arranged and so conducted and so advertised that the highest and best prices could be obtained. If he did not do that, and in consequence of that the goods were sacrificed to him in the first place as trustee, then the bank is responsible if by any reason of that want of care in the conduct of the sale the goods brought less than the $15,500, including in that the debt of Datz and his brother and this $1,200 note.] [14]  [The question arises, having gotten possession of the property, in what manner did he use it?  Did he exercise the care and prudence and thoughtfulness in all the details of that business which a trustee is bound to exercise?  You will understand that there can be no higher duty than the duty of a trustee, on whom is imposed the duty of taking care of the property of another, and it is for you to say from all the evidence in this case that you have heard on both sides, whether in the conduct of that business from the period of time spoken of and from the moment he became trustee down to the last moment of time in which he exercised that office, he performed his duty as a reasonable and an honest man would and as every trustee should.] [15]

I desire to call your attention especially to the evidence under these several points, and, as I have already said, if by reason of Datz, the trustee, not exercising proper and reasonable care in all the branches of this business from the time he became trustee down to the last moment, then the plaintiff cannot recover, if, by reason of that want of attention on the part of the trustee the property sold for less than the $15,500, which included the note for $1,200.

There has been evidence to show exactly what the value of the goods was.  The defendant, and perhaps another witness, said something about the value of them.  Whilst I shall not reiterate what they have said, it is my duty to say to you that you must carefully consider the evidence touching this point, as all others, as to the value of the goods which Datz obtained under his judgment and execution.  [If, gentlemen of the jury, you are satisfied that at any time under a fair and full sale of these goods their market value was equal to or more than $15,500, then your verdict should be for the defendant.] [16]

If you are satisfied, however, that the trustee, in all his actions and in the actions of all his agents, administered this trust honestly and fairly, and that he did all he should be expected to do to bring its full value, and that it did not realize the $15,500 by less than the $1,200, the amount of the note in controversy, then your verdict should be for the plaintiff.

As I have already said, I understood from the testimony of Datz, or the bank officer, that Datz was acting in this transaction as the trustee of the bank. If that is so, the bank is responsible for everything that he did or everything that anyone else did with his consent with reference to the question in controversy. I have only to say upon this question that whilst it has been sworn to that he was the agent of the bank, I do not understand that his position in this regard is or has been questioned by the plaintiff, and that if you are satisfied from all the testimony that the bank had control of this property through its trustee, Datz, and carried on the business, the plaintiff was responsible for the manner in which the business was conducted and carried on by Datz and his agent and responsible for all the results of it, and [if, as a result of the acts of Datz and his agent, this property sold for less than the amount I have mentioned, $15,500, when it would and could have sold for $15,500 or more, then your verdict must be for the defendant. It can only be for the plaintiff if you are satisfied, after a full consideration of the testimony, that all was done by Datz and his agent to obtain the fullest value for the property.] [17].

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–17) instructions, quoting them; (18, 19, 20, 21) rulings on evidence, but not quoting questions, offers, objections or the rulings.

*S. Davis Page* and *Emanuel Furth*, for appellant.—We submit that the plaintiff's points (1, 2 and 3) should have been affirmed by the court, and that their refusal worked substantial injury, which was not cured by any adequate explanation of the liability of the maker of accommodation paper in charge: Penn. Safe Deposit & Trust Co. v. Stetson, 175 Pa. 160; Delaware County Trust, etc., Co. v. Haser, 199 Pa. 17.

It is error for the court to reject instructions sound in law

and applicable to the evidence, unless, in lieu thereof, other correct instructions so prepared by the court are given, or the principles urged are substantially embodied in the court's charge already given : Pennsylvania Company v. Toomey, 91 Pa. 256, 258 ; Ballman v. Heron, 160 Pa. 377, 383, 384 ; Whitmire v. Montgomery, 165 Pa. 253 ; Sommer v. Gilmore, 160 Pa. 129 ; Kroegher v. McConway, 149 Pa. 444.

We submit that the standard of diligence fixed by the court for the performance of the trust by Datz, both at the sheriff's sale and after he had taken possession as sheriff's vendee, was substantially the highest degree of care, and not ordinary care.

The most that can be charged against Mr. Datz was his error of judgment as to Boulter's capacity to run the business for him satisfactorily. He could not foresee the final result of his effort, and he surely could not be charged with indifference in a matter wherein he invested $2,000 of his money for the further improvement of the business, and that in addition to his loss as a stockholder of the bank and a member of the firm of Datz & Brother : Waddell's Est., 196 Pa. 294 ; Fahnestock's App., 104 Pa. 46 ; Bartol's Est., 182 Pa. 407 ; Bank v. Klauss, 193 Pa. 402.

*John G. Johnson*, for appellee.

OPINION BY W. D. PORTER, J., December 13, 1902 :

This is an action against the maker of a promissory note. The defendant offered evidence which, if believed, established: (1) that the note was made without consideration for the accommodation of Boulter, the payee, and that the bank had knowledge of that fact at the time it was discounted, and (2) that Boulter, who owed the bank $14,100, including the note of $1,200 in suit, and also the firm of Datz & Brother, the sum $1,400, being unable to meet his liabilities, confessed judgment to Datz as trustee in the sum of $15,500, upon which judgment an execution was issued. That after the execution and before the sale by the sheriff, the defendant was assured by those having authority to represent the bank, that the amount of the note in question was included in the judgment, that he would be protected, and that it did not make any difference to him " whether that sale brought a thousand or ten thousand dollars ;

there was plenty of money there to pay everybody." The defendant testified that the cashier said to him, " Go home and don't worry." All the stock of merchandise and machinery owned by Boulter were sold under this execution. There was evidence that the sale by the sheriff was conducted in such a manner as to prevent the realization of the value of the goods. Datz, the plaintiff in the execution, bought in all the stock of goods, as trustee for the bank, and in that character, with the full knowledge and consent of the bank, carried on the business for more than a year. There was evidence which would have justified a finding that the stock of merchandise and machinery was of a market value greater than the amount of the indebtedness for the payment of which it was held in trust, but because of negligence in the management of the trust, the entire property was sacrificed for a much less amount.

There had been a former trial of this action, but the judgment in which that trial resulted was reversed by the Supreme Court, which decision is reported in 192 Pa. 315. We have here the same evidence of which Mr. Justice GREEN, who wrote the opinion in that case, said : " Under the foregoing testimony, without considering the personal testimony of the defendant, it is not easy to see how the conclusion can be resisted that Datz, the plaintiff in the judgment, took the judgment, held it and bought in all the stock of goods, as trustee for the bank, with the full knowledge and consent of the bank, and also carried on the business as such trustee for more than a year. As it seems to us now, the jury might well find that the bank, having control of the property, through their trustee, carried on the business, and were properly responsible for the manner in which it was conducted and for its results. It seems to us a fair question, for the jury was raised, under the testimony, to inquire into the operations of the trust, and we think the defendant should be at liberty to show what the stock of goods was worth, what it sold for, what was done with the proceeds, and if he could establish facts which entitled him to claim that the bank had received, or ought to have received, satisfaction for the note in suit out of the subsequent management and disposition of the goods by the trustee, he should have the opportunity to do so."

The learned judge of the court below, upon the present trial,

charged the jury in language too plain to be misunderstood, in substance, that the defense involved the determination of these questions of fact: (1) Was the defendant an accommodation maker of this note? (2) Did the plaintiff have knowledge of that fact at the time the note was discounted? (3) Was the note paid by the property sold by the sheriff, or ought it to have been paid by that property if the trustee had performed his duty "as a reasonable and honest man would and as every trustee should?" The jury were told to consider the first and second questions, and if they failed to find either that the note was accommodation paper, or that the bank had knowledge of that fact, then the verdict must be for the plaintiff. The jury must have understood that if the defendant had failed to satisfy them that he was an accommodation maker, and that the bank knew that fact at the time it discounted the note, the plaintiff was entitled to recover. The defendant was required to establish those facts to the satisfaction of the jury, before they were to proceed to inquire into the conduct of the trustee in the management of the property. If these preliminary questions were determined in favor of the defendant, the jury were then to inquire into the management of the property acquired by the bank under the execution. The first point presented by the plaintiff was a correct statement of an abstract principle of law, and it would have done no harm to affirm it with proper explanation. In this case, however, the defendant was not contending that it was a good defense for the maker of a note to show that it had been made for the accommodation of the payee when the suit was by the indorsee, that fact was merely an element in a theory of defense which the Supreme Court had already decided to be sound. The learned judge, in his general charge, properly instructed the jury as to the nature of accommodation paper and the liability of the maker thereof. The refusal of this point could not have prejudiced the plaintiff's case. The first, second and third specifications of error are dismissed.

The defense was not based on an allegation that the plaintiff held collateral securities for this debt. The allegation was that the collateral had been realized upon, and that the debt had either been paid, or that it ought to have been paid if reasonable care had been exercised in the management of the

property. The decision of the Supreme Court upon the former appeal clearly recognized the right of this defendant to set up the misconduct of the trustee and the sacrifice of the trust property as a defense to this action. The fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh and twelfth specifications of error are dismissed.

That part of the charge in which the learned judge instructed the jury as to the duty of the trustee to see that the sheriff's sale was so advertised, so conducted and the goods so arranged as to bring the very best possible price, is the subject of the thirteenth and fourteenth specifications of error. We are not satisfied that it was the duty of this trustee to do any advertising other than that which is required by law in proceedings of like character, which is to be done by the sheriff. There was no evidence in this case that the sale had not been properly advertised, and the presumption is that the sheriff did his duty. This instruction, however, worked no harm to plaintiff's cause, for none of the goods were sold to outside parties; all became at the sale the property of the trustee, and subject to the trust. The plaintiff was not, therefore, required to account for the value of goods which had been permitted to escape from the grasp of the trust through the sheriff's sale. The manner in which the case was submitted to the jury relieved the plaintiff from liability to account for anything but the manner in which the property was disposed of after title had been acquired through the sale by the sheriff. The thirteenth and fourteenth specifications of error are dismissed.

The instruction of the court as to the final question in the case, the manner in which the trustee was bound to manage the property after he had gotten possession of it, and the grounds upon which the bank could be charged for a failure to realize what the property was worth, embodied the language which is complained of in the fifteenth, sixteenth and seventeenth assignments of error. Had the jury been left upon this point without other instruction than that included in these assignments of error, we would have been inclined to the opinion that the standard of duty upon the part of the trustee thereby indicated was too high, and that the jury might, also, have been misled into assuming that the burden of proof was upon the plaintiff as to this point. But the part of the charge here

assigned for error was accompanied by instructions as to the nature of the duty of the trustee and the manner in which that duty was to be discharged. They were in effect told that the duty of the trustee was to conduct the business " as a reasonable and honest man would," under the circumstances. The learned judge stated the question of fact, upon the determination of which this branch of the case must turn, to be: " If by reason of Datz, the trustee, not exercising proper and reasonable care in all the branches of this business from the time he became trustee down to the last moment, then the plaintiff cannot recover, if, by reason of that want of attention upon the part of the trustee the property sold for less than the $15,500, which included the note for $1,200." The whole tenor of this part of the charge was to the effect that the plaintiff was entitled to recover, unless the jury were satisfied that the market value of the goods, at a fair and full sale, was equal to or more than the $15,500, and that the reason that amount was not realized was because of the failure of the trustee to give the business reasonable care and attention and the default of his agents to honestly and fairly administer the trust. The fifteenth, sixteenth and seventeenth assignments of error are without merit.

The eighteenth, nineteenth, twentieth and twenty-first assignments of error violate Rule 16, of this court, and cannot be regarded. An assignment of error to the admission or exclusion of testimony must quote the questions or offers, the objections thereto, and the ruling of the court thereon. The ruling of the court is necessarily upon the sufficiency of the objection, and an assignment of error which does not show the ground of an objection does not make clear what the ruling of the court was: Gish v. Brown, 171 Pa. 479.

The twenty-second assignment of error is but a repetition of the seventh, which has already been considered.

The judgment is affirmed.